IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SOUTHEASTERN LEGAL FOUNDATION, INC. | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | FILE NO. 1:15-CV-386-AT |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Southeastern Legal Foundation, Inc. (SLF), respectfully files this Brief in Response to Defendant's Motion for Partial Summary Judgment and in Support of Plaintiff's Cross-Motion for Partial Summary Judgment.

**INTRODUCTION**

The Freedom of Information Act (the FOIA), 5 U.S.C. § 552, enacted in 1966, provides the public with a right of access to federal agency records. The people must know what the government is doing. "Open government has been recognized as the best insurance that government is being conducted in the public interest." *See* S. Rep. No. 93-854, at 153-54 (May 16, 1974). Our Founding Fathers commitment to

open government and the public's right to information can be seen in the First Amendment which "protects not only the right of citizens to speak and publish, but also to receive information." *Id*. The FOIA is "an affirmative congressional effort to give meaningful content to constitutional freedom of expression." *Id*.

SLF submitted several FOIA requests to the U.S. Environmental Protection Agency (EPA or the Agency) in an effort to obtain information not already in the public domain and analyze, interpret and disseminate that information in a meaningful way to enhance public understanding of the Agency's operations and activities with respect to processing grants regarding anthropogenic global warming or climate change and processing FOIA requests. For years, EPA stonewalled SLF's attempts to obtain the requested records by employing a myriad of delay tactics including, but not limited to, improper denial of fee waiver requests, improper denial of requests for expedited processing, failure to meet any and all statutory deadlines, threats of administrative closure, production of records containing redactions that render the records incomprehensible, and general periods of refusal to communicate with SLF spanning over 15 months.

EPA wrongly denied SLF's requests for fee waivers and EPA has a statutory obligation to make the raw statistical data underlying its annual FOIA reports electronically available to the public upon request. For these reasons, in this cross-

motion for partial summary judgment, SLF asks this Court to enter summary judgment in its favor and order EPA to produce all records responsive to SLF's April 2010 and November 2013 FOIA requests at no cost.

## UNDISPUTED FACTS

Request No. HQ-FOI-01115-10

On April 12, 2010, SLF submitted a FOIA request to EPA seeking records regarding awards or grants of federal funds for research on global climate change (Request No. HQ-FOI-01115-10). (Compl. Ex. B-1; SLF ¶ 1[1].) Specifically, SLF sought the following records:

a.    Grant applications seeking federal funds for any and all research on global climate change, its causes and effects, methods of measuring changes in climate, and responses to climate change, in any scientific discipline and for any purpose;

b.    Awards, grants, or funding notifications made pursuant to applications seeking federal funds for research on global climate change, its causes and effects, methods of measuring changes in climate, and responses to climate change, in any scientific discipline and for any purpose;

c.    Accompanying and subsequent correspondence between your agency and grant applicants or recipients, including but not limited to supplemental, tailoring agreements, revisions or amendments, compliance instructions, and completeness, eligibility, or substantive review documents;

---

[1] For readability purposes, SLF cites to Plaintiff's Statement of Undisputed Material Facts in Support of Its Cross-Motion for Partial Summary Judgment by referencing "SLF ¶ _."

d.    Denial or deferral of awards, grants, or funding made in response to applications seeking federal funds for research on global climate change, its causes and effects, methods of measuring changes in climate, and responses to climate change, in any scientific discipline and for any purpose;

e.    Any and all documents referencing, describing, or creating: contracts for labor, consulting, or employment; purchases of capital or material; transfers or purchases or real property; and any other agreements entered by the funding grantee or its principal investigator in furtherance of or in conjunction with federally funded research on global climate change, its causes and effects, methods of measuring changes in climate, and responses to climate change, in any scientific discipline and for any purpose.

(Compl. Ex. B-1; SLF ¶ 2.)  SLF sought a waiver of all fees pursuant to the FOIA (5 U.S.C. § 552(a)(4)(A)(iii)) and EPA regulations (40 CFR 2.107) because the information sought was in the public interest, was likely to contribute to public understanding of the operations and activities of government, and because SLF had no commercial interest in the information.  (Compl. Ex. B-1; EPA ¶ 3;[2] SLF ¶ 3.) By letter dated April 20, 2010, EPA set forth six factors it considers when reviewing a fee waiver request and stated that if SLF wished to receive a fee waiver it "must address, in sufficient detail, these six factors, and that if SLF did not respond within

---

[2] For readability purposes, SLF cites to Defendant's Statement of Material Facts in Support of Its Motion for Partial Summary Judgment by referencing "EPA ¶ _."

seven days from the date of the letter, EPA would automatically deny SLF's request[]."  (Compl. Ex. B-3; SLF ¶¶ 4-5.)

SLF timely responded and as requested, provided detailed justification for its fee waiver request.  (Compl. Ex. B-4; SLF ¶ 6.)  The first factor requires that the records "concern identifiable operations or activities of the government."  (Compl. Ex. B-3; SLF ¶ 4.)  In its April 27 letter, SLF explained the requested records directly relate to the Agency's decision-making processes for awarding and denying scientific grants to various persons and institutions and to the Agency's decision-making processes involving anthropogenic global warming or climate change. (Compl. Ex. B-4; SLF ¶ 7.)  The second factor requires that disclosure of the records must be "meaningfully informative in relation to the subject matter of the request." (Compl. Ex. B-3; SLF ¶ 4.)  SLF explained that the requested records would educate the public on how and under what criteria EPA awards and denies scientific grants to persons and institutions.  (Compl. Ex. B-4; SLF ¶ 8.)

The third and fourth factors require that the records contribute "significantly" to the public at large as opposed to the understanding of the requester or a narrow segment of interested persons.  (Compl. Ex. B-3; SLF ¶ 4.)  SLF explained it would disseminate the information to the largest audience possible through its publicly available website and ancillary websites, through mailers and publications produced

5

throughout each year and through publicly available court documents. (Compl. Ex. B-4; SLF ¶ 9.) SLF further explained that "the dissemination of [its] work to the general public is one of the most important components of [its chartered] directive." Id.) The fifth and sixth criteria address the requester's commercial interest. (Compl. Ex. B-3; SLF ¶ 4.) SLF explained it is a nonprofit enterprise with no commercial interest in the requested records. (Compl. Ex. B-4; SLF ¶ 11.) In its April 27 letter, SLF also explained that the Agency recently granted SLF's fee waiver request for a FOIA request in which SLF sought records regarding different aspects of the same underlying issue: EPA determinations and decision-making process involving anthropogenic global warming or climate change. (Compl. Ex B-4; SLF ¶ 10.)

Despite SLF's timely and detailed response, by letter dated May 4, 2010, EPA denied SLF's fee waiver request for the only following articulated reason: SLF allegedly did "not express a specific intent to publish or disseminate the information to the general public." (Compl. Ex. B-5; EPA ¶ 4; SLF ¶ 12.) On June 3, 2010, SLF administratively appealed EPA's denial. (Compl. Ex. B-6; EPA ¶ 5; SLF ¶ 13.) SLF elaborated on its already expressed intention and ability to interpret, analyze, publish and disseminate the requested records. (Compl. Ex. B-6; SLF ¶ 14.) SLF explained the requested records contain information related to how EPA funds research into anthropogenic global warming and climate change and to the Endangerment and

Cause or Contribute Findings, the potential effects of which have vast and numerous implications for the United States economy and all of its citizens. (Compl. Ex. B-6; EPA ¶¶ 6-7; SLF ¶ 15.) SLF set forth a detailed plan for and analysis of the information which included its publicly available websites (one of which is solely dedicated to the issue of anthropogenic global warming and climate change), its numerous publications and mailers, and as a by-product, any publicly available court documents arising out of potential litigation related to the Endangerment and Cause of Contribute Findings. (Compl. Ex. B-6; EPA ¶¶ 6-7; SLF ¶ 16.)

On August 16, 2011, 14 months after SLF submitted its administrative appeal of EPA's denial of SLF's fee waiver request, EPA denied SLF's appeal. (Compl. Ex. B-15; EPA ¶ 8; SLF ¶ 17.) The Agency supported claimed SLF did not satisfy the first, second and fourth factors. (Compl. Ex. B-15; EPA ¶ 9; SLF ¶ 17.)

On December 7, 2011, EPA provided its initial response to FOIA Request No. HQ-FOI-01115-10, sought a guarantee of payment for $2,000 in search and duplication costs and estimated it would take another eight months to respond. (Compl. Ex. B-18; SLF ¶ 18.) In response, SLF explained that because EPA failed to provide SLF with an initial determination within 20 business days as required by the FOIA (even applying the most liberal dates in the Agency's favor), the Agency

may not assess search fees.  (Compl. Ex. B-19; SLF ¶ 19.)  On May 16, 2012, SLF administratively appealed EPA's delay in processing.  (Compl. Ex. B-25; SLF ¶ 20.)

In a letter dated June 21, 2012, EPA responded to both SLF's December 8, 2011 email and May 16, 2012 administrative appeal for delay in processing. (Compl. Ex. B-26; SLF ¶ 21.)  The Agency notified SLF it was entitled to a fee waiver with respect to search costs and that the Agency would contact SLF by July 3, 2012 with an estimated processing date and duplication costs.  (Compl. Ex. B-26; EPA ¶ 13; SLF ¶ 21.)  In an email dated July 5, 2012, nearly 26 months after SLF first submitted its request, EPA informed SLF duplication would cost approximately $1,125.00 and it would take EPA another five months to process the request. (Compl. Ex. B-28; EPA ¶ 14; SLF ¶ 22.)  In response, SLF did not approve the costs and explained that pursuant to the FOIA, duplication costs could be avoided by electronically producing responsive records.  (Compl. Ex. B-28; EPA ¶ 15; SLF ¶ 23.)  Without any response to SLF's request for electronic production of responsive records or any further explanation, in September 2012, EPA administratively closed Request No. HQ-FOI-01115-10.  (Compl. Ex. B-28; EPA ¶ 17; SLF ¶ 24.)

FOIA Request No. EPA-HQ-2014-001489

On November 22, 2013, SLF submitted a FOIA request to EPA seeking the raw statistical data referred to in 5 U.S.C. § 552(e)(3) that EPA used to create its

annual FOIA reports for the years 2009 through 2012, and any records relating to those reports (FOIA Request No. EPA-HQ-2014-001489). (Compl. Ex. C-1; EPA ¶ 18; SLF ¶ 25.) SLF sought a fee waiver of search, review and reproduction fees pursuant to the FOIA and EPA regulations because the information sought was in the public interest, was likely to contribute to public understanding of the operations and activities of government, and because SLF has no commercial interest in requesting the information. (Compl. Ex. C-1; EPA ¶ 23; SLF ¶ 26.)

By letter dated November 27, 2013, EPA set forth six factors that it considers when reviewing a fee waiver request and stated that if SLF wished to receive a fee waiver it "must address, in sufficient detail, these six factors, and that if SLF did not respond within seven days from the date of the letter, EPA would automatically deny SLF's request[]." (Compl. Ex. C-3; SLF ¶¶ 27-28.) SLF responded with a detailed justification for its fee waiver request. (Compl. Ex. C-4; SLF ¶ 29.) The first factor requires that the records "concern identifiable operations or activities of the government." (Compl. Ex. C-3; SLF ¶ 27.) In its December 9, 2013 letter, SLF explained that the requested records directly reflect the Agency's processing of FOIA requests which is an identifiable operation or activity. (Compl. Ex. C-4; SLF ¶ 30.) The second factor requires the requested material "be meaningfully informative in relation to the subject matter of the request." (Compl. Ex. C-3; SLF

¶ 27.)  SLF explained the underlying raw statistical data and related communications provide meaningful insight into how EPA processes FOIA requests and into governmental transparency generally.  (Compl. Ex. C-4; SLF ¶ 2.)

The third and fourth factors require that the records contribute "significantly" to the public at large as opposed to the understanding of the requester or a narrow segment of interested persons.  (Compl. Ex. C-3; SLF ¶ 27.)  SLF explained that EPA's processing of FOIA requests including delays in response time, denials of requests and exemption claims, has far-reaching consequences that, as President Obama himself has pointed out,[3] affect every single American and will contribute significantly to public understanding of how EPA processes FOIA requests. (Compl. Ex. C-4; SLF ¶ 32.) The fifth and sixth criteria address the requester's commercial interest.  (Compl. Ex. C-4; SLF ¶ 33.)  SLF explained it is a nonprofit enterprise with absolutely no commercial interest in the requested records.  (Id.)  Despite SLF's timely and detailed response, by letter dated May 4, 2010, EPA denied SLF's fee waiver request for the only following articulated reason: SLF allegedly did "not

---

[3] In stressing the importance of the FOIA, the current President has stated: "In our democracy, the FOIA, which encourages accountability through transparency, is the most prominent expression of a profound national commitment to ensuring an open Government.  At the heart of that commitment is the idea that accountability *is in the interest of the Government and the citizenry alike*."  Memorandum of Jan. 21, 2009, 74 Fed. Reg. 4683 (Jan. 26, 2009) (emphasis added).

express a specific intent to publish or disseminate the information to the general public." (Compl. Ex. C-5; EPA ¶ 24; SLF ¶ 34.) On January 10, 2014, SLF administratively appealed the denial. (Compl. Ex. C-6; SLF ¶ 35.)

On December 16, 2013, SLF spoke with EPA's National FOIA Officer, Mr. Larry Gottesman who informed SLF it would receive a letter stating EPA does not have responsive records because EPA used a third party, FOIAXpress, to track its FOIA requests for the years 2009 through 2012. (Compl. Ex. C-7; SLF ¶ 36.) The Agency never notified SLF of its adverse determination in writing and on January 13, 2014, SLF administratively appealed the delay in processing. (Compl. Ex. C-7; SLF ¶ 36.) Nearly two months later, EPA provided its final determination and stated it was unable to produce the requested records for the following reasons: "EPA used FOIAXpress, as the tracking tool and to create EPA's FOIA Annual Reports which are the subject of your request. FOIAXpress is a proprietary software tool that is no longer being used by EPA or being supported by the vendor. In the past when we received a similar request, that vendor had to run a special report, through the 'back-end', which we do not have access to." (Compl. Ex. C-9; SLF ¶ 37.)

On April 4, 2014, SLF administratively appealed EPA's final determination explaining EPA failed to even respond to Items 2, 4, 6, and 8 of the request, and that EPA has a statutory obligation to produce records responsive to Items 1, 3, 5, and 7

because they did not lose their "agency record" status just because they were maintained by a government contractor. (Compl. Ex. C-10; SLF ¶ 38.) SLF further explained that pursuant to 5. U.S.C. § 552(e)(3), all agencies are required to make the records sought in Items 1, 3, 5, and 7 available to the public upon request, regardless of who controls them. (Id.) EPA never responded to SLF's administrative appeal, but did notify SLF that its appeal of the fee waiver denial was moot. (Compl. Ex. C-11; Gottesman Decl. ¶ 13; SLF ¶ 39.)

EPA's assertions that it cannot access the requested information, at least with respect to fee waivers, is false. On the date of this filing, SLF learned that on December 13, 2013, EPA produced the underlying raw statistical data regarding fee waivers to another requester. (Hermann Decl. ¶¶ 5-10; SLF ¶¶ 42-46.)

## ARGUMENT AND CITATION OF AUTHORITY

### I.    Standard of Review.

In FOIA litigation, as in all litigation, summary judgment is appropriate only when the pleadings and declarations demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c); *see also Cunningham v. FAA*, Civil Action File No. 1:12-CV-3577-TWT, 2013 U.S. Dist. LEXIS 124100, *9 (Aug. 29, 2013). In FOIA cases, a court reviews decisions

of a government agency *de novo*.  5 U.S.C. § 552(a)(4)(B).  The court's review of any action regarding the waiver of fees is limited to the record before the agency.  5 U.S.C. § 552(a)(4)(A)(vii).  In reviewing a motion for summary judgment under the FOIA, the court must view the facts in the light most favorable to the requester. *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

The Supreme Court "repeatedly has stressed the fundamental principle of public access to Government documents that animates the FOIA." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151-52 (1989).  "In enacting FOIA, Congress struck the balance it thought right – generally favoring disclosure, subject only to a handful of specified exemptions – and did so across the length and breadth of the Federal Government."  *Milner v. Dep't of the Navy*, 562 U.S. 562, 571 n.5 (2011). As the Court has previously explained, "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  The FOIA was meant to be a "disclosure statute," not a "withholding statute."  *See Milner*, 562 U.S. at 565.

II.    <u>SLF is entitled to a fee waiver for search fees related to Request No. HQ-FOI-01115-10</u>.

"[F]ee waivers play a substantial role in the effective use of the FOIA."  132 Cong. Rec. S14298 (Sept. 30, 1986) (Sen. Leahy).  In 1986, Congress amended the

FOIA "to remove the roadblocks and technicalities which have been used by various Federal agencies to deny waivers or reductions of fee under the FOIA," 132 Cong. Rec. S16496 (Oct. 15, 1986) (Sen. Leahy).  Congress' intent and mandate to federal agencies was clear then and remains clear now – fee waiver requests "should be liberally granted to all requesters other than those who are commercial users," 132 Cong. Rec. S14298 (Sept. 30, 1986) (Sen. Leahy), and any "[d]oubts should be resolved in favor of the requester."  132 Cong. Rec. H9463 (Oct. 8, 1986) (Reps. Kindness and English); *see also McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987).  Unfortunately, nearly 30 years later, EPA is still abusing its power and using fee waivers as a shield to protect it from its statutory obligation to produce records to those who may challenge its findings.  *See Landmark Legal Found. v. EPA*, Civil No. 12-1726 (RCL), 2015 U.S. Dist. LEXIS 24620, *43-44 (D.D.C. Mar. 2, 2015) ("EPA continues to demonstrate a lack of respect for the FOIA process.")

The administrative record establishes that EPA wrongly denied SLF's request for fee waiver "because disclosure of the [requested] information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of [SLF]."  5 U.S.C. § 552(a)(4)(A)(iii).  The Agency promulgated a six-

factor analysis to structure its consideration of the statutory two-prong test. *See* 40 CFR 2.107(l)(2)(i)-(vi). The first four factors address the public-interest prong and the latter two factors the commercial-interest prong.[4]

SLF satisfied the first factor because the requested information involves the operations or activities of government. 40 CFR 2.107(l)(2)(i). The requested information involves several key government operations or activities - it would provide insight into EPA's decision-making process generally; it concerns EPA's decision-making process for awarding and denying scientific grants to various persons and institutions including applications, notifications, correspondence and contracts; it involves communications between the government and outside grant applications, grant recipients and others receiving federal funds; and it involves the Agency's decision-making processes involving anthropogenic global warming or climate change. (Compl. Ex. B-4; SLF ¶ 7.)

"[T]he phrase 'operations and activities of the government' should be broadly construed." 132 Cong. Rec. S16496 (Oct. 15, 1986) (Sen. Leahy). As such, courts have found information similar to that requested by SLF to involve the operations or activities of government. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1313

---

[4] The Agency does not challenge SLF's assertion that it is a nonprofit enterprise with absolutely no commercial interest in the requested records. (EPA Br. at n.5.)

(D.C. Cir. 2003) (finding records regarding IRS Commissioner's relationship with a private company and IRS decisions involved the operations and activities of the government); *Cause of Action v. FTC*, 961 F. Supp.2d, 142, 154 (D.D.C. 2013) (finding records illustrating FTC's decision-making process and communications between the agency and those outside the agency involved the operations and activities of government). Similar to the D.C. Circuit Court of Appeals response in *Rossotti*, SLF "cannot imagine" what else it could have said to satisfy the Agency's "appetite for specificity" with respect to this factor. 326 F.3d at 1313.

In its request, SLF seeks grant applications, awards, denials, notifications, contracts, and correspondence with applicants, all of which could meaningfully inform and educate the public on how and under what criteria EPA awards and denies grants regarding anthropogenic global warming or climate change to persons and institutions. (Compl. Ex. B-4; SLF ¶ 8.) SLF satisfied the second factor because the requested information is likely to contribute in a meaningful way to public understanding of EPA's operations identified in response to the first factor. 40 CFR 2.107(l)(2)(ii); *see Rossotti*, 326 F.3d at 1313-14 (finding requester did not have to establish information would likely contribute to public understanding as long as there is a *potential* for public understanding); *see also* 132 Cong. Rec. S. 14298 (Sept. 30, 1986) (Sen. Leahy) (noting Congress intended for fee waiver requests to

16

be granted so long as the requested information contributed in *any* meaningful way) (emphasis added).

To satisfy the third factor and establish the requested information would increase understanding of the public at large, a requester must explain how and to whom it will disseminate the information received. *Rossotti*, 326 F.3d at 1312; *Cause of Action*, 961 F. Supp. 2d at 157; CFR 2.107(l)(2)(iii). Notably, the requester need not establish that it "intends to disseminate the requested information widely to the public." 132 Cong. Rec. S16496 (Oct. 15, 1986) (Sen. Leahy). This is because "[o]ur democracy depends on a knowledgeable citizenry, and public understanding of the operations or activities of Government is greatly enhanced every time that a single citizen uses the FOIA to obtain records which help that person understand what Government is doing on an issue of concern to that person" *Id*.

SLF satisfied the third factor because it explained it would disseminate the requested information to the largest audience possible by disseminating it on its publicly available website (www.southeasternlegal.org) and ancillary website (www.epalawsuit.org), through mailers and publications produced throughout the year and through publicly available court documents. (Compl. Ex. B-4, B-6; SLF ¶¶ 9-11, 14-16.)  *See Rossotti*, 326 F.3d at 1314 (finding third factor satisfied where plaintiff identified several ways to communicate to the public including news

17

releases, monthly newsletters, and radio and television programs); *Forest Guardians v. United States Dep't of Interior*, 416 F.3d 1173, 1180 (10th Cir. 2005) (finding third factor satisfied where plaintiff published online newsletter and intended to establish website to disseminate information); *Fed. CURE v. Lappin*, 602 F. Supp. 2d 197, 203 (D.D.C. 2009) (finding third factor satisfied where plaintiff stated it would disseminate information on its website, newsletter and on-line discussion groups to an approximate number of subscribers); *Judicial Watch, Inc. v. United States Dep't of Justice*, 185 F. Supp. 2d 54, 62 (D.D.C. 2002) (finding third factor satisfied where plaintiff described several methods of dissemination including website, blast faxes, and radio and television programs).  SLF's five methods of dissemination, combined with its mission and a liberal construction of the fee waiver requirements in SLF's favor, support finding SLF satisfied the third factor.

It is true that EPA issued an explanation of the Endangerment and Cause and Contribute Findings; however, EPA's explanation of those findings is irrelevant to the issue of SLF's fee waiver request because that explanation does <u>not</u> include the requested information.[5]  The requested information – records related to grant

---

[5]    Even if some of the requested information is publicly available in some form synthesized and produced by EPA, the public would significantly benefit from SLF's analysis and dissemination of the raw information.  *See Cause of Action*, 961 F. Supp. 2d at 156 (finding "even if some of the requested information is publicly available in synthesized form, there exists some significant benefit to public

applications and denials for research on anthropogenic global warming or climate change – is <u>not</u> publicly available.  SLF satisfied the fourth factor because it established that public knowledge of EPA's decision-making process for awarding and denying scientific grants to various persons and institutions including applications, notifications, correspondence and contracts, EPA's communications with outside grant applications, grant recipients and others receiving federal funds and EPA's decision-making processes involving anthropogenic global warming or climate change, will be enhanced following disclosure.  (Compl. Ex. B-4, B-6; SLF ¶¶ 9-11, 14-16.)  *See* 40 CFR 2.107(l)(2)(iv); *see also Rossotti*, 326 F.3d at 1314-15 (finding fourth factor satisfied because at least some of the requested information was not publicly available); *Fed. CURE*, 602 F. Supp. 2d at 205-206 (finding fourth factor satisfied because information requested was not publicly available); *Cause of Action*, 961 F. Supp. 2d at 156 (same).

Because SLF's fee waiver request satisfied both prongs of the public interest fee waiver test, SLF respectfully requests that this Court grant summary judgment in favor of SLF and order EPA to produce all responsive records at no cost to SLF.[6]

---

understanding if the plaintiff requests raw information from the agency to synthesize it and perform a public oversight function.")

[6]  EPA incorrectly argues SLF is not entitled to disclosure of all responsive records because it did not exhaust administrative remedies with respect to that aspect of the FOIA request.  If an agency fails to make a "determination" with adequate specificity

III.   Section 552(e)(3) of the FOIA requires EPA to produce the raw statistical data underlying its annual FOIA reports.

EPA has a statutory obligation to make the raw statistical data used to prepare its 2009, 2010, 2011 and 2012 annual FOIA reports available electronically.   5 U.S.C. § 552(e).   For decades, the FOIA has required all federal agencies to submit to the Attorney General, and make available to the public, a report detailing its operations and activities with respect to processing FOIA requests.   *Id*.   In 2007, Congress recognized the need to "enhance[] the agency reporting requirements under FOIA [and] to ensure that federal agencies provide the information needed to understand FOIA delays."   U.S. Senate, Committee on Judiciary, *Open Government Act of 2007*, at 4 (to accompany S. 849) (110 S. Rpt. 59) (Apr. 30, 2007).   In response to that need, Congress amended the FOIA to require all federal agencies to also "make the raw statistical data used in its reports available electronically to the public upon request."   5 U.S.C. § 552(e)(3).

Whether Congress' mandate to make the raw statistical data underlying an agency's annual FOIA report available is contingent on finding the raw statistical

---

within the statutory deadlines provided in the FOIA, the administrative exhaustion requirement will not apply.  *CREW v. FEC*, 711 F.3d 180, 189-90 (D.C. Cir. 2013). EPA acknowledged it failed to meet the statutory requirements for providing an initial determination, and as such, SLF is not required to exhaust its administrative remedies.  (Compl. Ex. B-26; EPA ¶ 13; SLF ¶ 21.)

data is an "agency record" appears to be an issue of first impression.    For the following reasons, SLF urges this Court to find that upon request, federal agencies are required to produce the raw statistical data regardless of whether the information satisfies the statutory definition of an "agency record."    First, a plain reading of the FOIA supports such a finding.  *See Alley v. United States HHS*, 590 F.3d 1195, 1207-08 (11th Cir. 2009) (reviewing plain meaning of "disclose" to interpret the FOIA); *Clarkson v. IRS*, 678 F.2d 1368, 1376 (11th Cir. 1982) (reviewing plain meaning of language in subsections of the FOIA).  The provision requiring production of raw statistical data is found in subsection "(e)" which relates solely to statutory reporting requirements, not in subsection "(a)" which relates to production of agency records.  And, nothing in subsection "(e)" supports a finding that production of the raw statistical data is contingent on whether it is considered an "agency record" as defined by the FOIA.  Subsection "(e)(3)" stands alone and in no uncertain terms requires all agencies to make the underlying raw statistical data used to prepare the annual FOIA report available electronically upon request.

Second, the Court should review the FOIA as a whole.  *See United Savings Ass'n v. Timbers of Inwood Forest Associates*, 484 U.S. 365, 371 (1988) ("Statutory construction . . . is a holistic endeavor").  If Congress intended to limit its mandate to produce raw statistical data to only that information satisfying the definition of an

"agency record," then it would not have needed to amend the statute to specifically set forth its mandate – the raw statistical data would have already been covered by the FOIA. Limiting the requirement to only make available "agency records" providing raw statistical data effectively ignores Congress' 2007 amendment and removes the requirement from the FOIA. Finally, finding otherwise provides agencies with a roadmap to circumvent the Congressional mandate to make the raw statistical data available and undermines the FOIA's goals of transparency.

Even if this Court finds that an agency's obligation to produce the raw statistical data underlying its annual FOIA reports hinges on finding the data constitutes an "agency record," disclosure is warranted because the raw statistical data is an "agency record." Material is an "agency record" within the meaning of the FOIA if the agency either creates or obtains the material and the agency is in control of the material at the time the FOIA request is made. *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144-45 (1989). EPA does not dispute that it created and/or obtained the raw statistical data. And, courts have found that when an agency exercises control over the collection and analysis of data, even if it does not manage the database where the data is stored, the data is an agency record. *See Burka v. United States HHS*, 87 F.3d 508, 515 (D.C. Cir. 1996) (finding data tapes

were created or obtained by the agency because the agency exercised control over the collection and analysis of the underlying data).

At all times relevant to this lawsuit, EPA has had the raw statistical data in its possession. (Gottesman Decl. ¶ 11; SLF ¶ 41.) The Agency has never claimed that making raw statistical data available electronically results in undue burden or interference with its normal operations. Rather, EPA argues that since the requested data is on a backup tape, it does not control it. Not having ready access to information is very different than not controlling it. *See Am. Small Bus. League v. United States Small Bus. Admin.*, No. C 08-00829 MHP, 2008 U.S. Dist. LEXIS 65905, *10 (N.D. Cal. Aug. 26, 2008) (finding information constituted agency records even though the agency did not have access to the raw database, because it had the authority to extract information). Because EPA had, and still has, control over the requested information, it has an obligation to produce it in response to SLF.

Finally, EPA's assertion that it cannot access the requested information is false as evidenced by its production to American Farm Bureau Federation of the same information SLF requested – underlying raw statistical data for fee waivers. (Hermann Decl. ¶¶ 5-10; SLF ¶¶ 42-46.)

IV.    <u>SLF is entitled to a fee waiver for search and duplication fees related to its 2013 FOIA Request</u>.

The FOIA does not permit an agency to push the costs of its statutory obligation to make the raw statistical data electronically available onto the public. 5 U.S.C. § 552(e)(3). Even if EPA could assess fees against a person making such a request, SLF is entitled to a fee waiver because disclosure of the raw statistical data underlying EPA's annual FOIA reports is in the public interest – "it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of [SLF]." 5 U.S.C. § 552(a)(4)(A)(iii). The raw statistical data provides insight into how EPA processes FOIA requests and, as the Committee on the Judiciary pointed out in its Senate Report on the OPEN Government Act of 2007, this information will "provide the information needed to understand FOIA delays." U.S. Senate, Committee on Judiciary, *Open Government Act of 2007*, at 4 (to accompany S. 849) (110 S. Rpt. 59) (Apr. 30, 2007). The Agency's annual FOIA reports provide only summary information. (Compl. Ex. C-4, C-6; SLF ¶¶ 29-33, 35.) While the summary data is informative to a degree, disclosure of the raw statistical data takes informative material and makes it meaningful in such a manner that can only add to public understanding of how EPA processes FOIA requests. (Id.)

As SLF explained in its administrative appeal of EPA's fee waiver request denial, SLF will analyze and disseminate the information through its websites and

publications to ensure it is accessible to all FOIA requesters and the public at large. (Compl. Ex. C-6; SLF ¶ 35.) Even though EPA's annual FOIA reports are available online, the raw statistical data is not publicly available. SLF has no commercial or financial interest in the data, and would receive no pecuniary benefit from the information sought. (Compl. Ex. C-4; SLF ¶ 33.) Because SLF's fee waiver request satisfied both prongs of the test, this Court should order EPA to produce the raw statistical data underlying the relevant annual FOIA reports at no cost to SLF.

## CONCLUSION

SLF respectfully requests the Court enter summary judgment in favor of SLF as to all counts regarding its 2010 and 2013 FOIA Requests and order EPA to produce all responsive records at no charge to SLF.

Respectfully submitted this 20th day of July, 2015.

Southeastern Legal Foundation, Inc.

By:    /s/ Shannon L. Goessling
       Shannon L. Goessling
       Georgia Bar No. 298951
       Kimberly S. Hermann
       Georgia Bar No. 646473
       2255 Sewell Mill Road
       Suite 320
       Marietta, Georgia 30062
       (770) 977-2131
       (770) 977-2134 (Fax)

*Attorneys for Plaintiff*

25

## <u>Local Rule 7.1 Compliance Certificate</u>

Pursuant to L.R. 7.1D, this is to certify that the foregoing PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT complies with the font and point selections approved by the Court in L.R 5.1B.  The foregoing was prepared on a computer using the Times New Roman font (14 point).

Southeastern Legal Foundation, Inc.

By:    /s/ Shannon L. Goessling
      Shannon L. Goessling
      Georgia Bar No. 298951
      Kimberly S. Hermann
      Georgia Bar No. 646473
      2255 Sewell Mill Road
      Suite 320
      Marietta, Georgia 30062
      (770) 977-2131
      (770) 977-2134 (Fax)

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 20, 2015, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail and/or facsimile. Parties may access the filing through the Court's electronic filing system.

/s/ Shannon L. Goessling