IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SOUTHEASTERN LEGAL FOUNDATION, INC. | ) ) ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| v. | ) ) | FILE NO. 1:15-CV-386-AT |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Southeastern Legal Foundation, Inc. (SLF), by counsel and pursuant to Local Civil Rule 56.1, respectfully submits this response to Defendant's Statement of Material Facts in Support of its Motion for Partial Summary Judgment and Plaintiff's Statement of Undisputed Material Facts in Support of its Cross-Motion for Partial Summary Judgment.

**Plaintiff's Response to Defendant's Statement of Material Facts in Support of
Its Motion for Partial Summary Judgment**

**A. Plaintiff's FOIA Request Submitted In April 2010 Regarding EPA's
Administration Of Federal Grants Awarded For Research On Climate
Change.**

1.      In April 2010, Plaintiff sent a FOIA request to EPA seeking records
pertaining to EPA's administration of federal grants for research on global climate
change. Plf. Ex. B-1 at 1-2.[1]

**RESPONSE:**      SLF does not dispute the material facts of Paragraph 1 of
the Agency's Statement, but disputes that Paragraph 1 of the Agency's Statement
reflects the full extent of the records SLF requested from the Agency.

2.      Specifically, Plaintiff requested (a) grant applications seeking federal
funds for research on global climate change; (b) grant notifications or awards for
research on global climate change; (c) correspondence between EPA and grant
applicants or recipients concerning applications or awards for research on global
climate change; (d) records concerning the denial or deferral of grants for research
on global climate change; and (e) all agreements entered into by the funding grantee
or its principal investigator in furtherance of or in conjunction with federally funded

---

[1] Most of the relevant administrative record is attached to Plaintiff's Complaint. *See*
ECF No. 1-1 through 1-51. Instead of reattaching those portions of the administrative
record to this Motion, EPA will cite to those administrative records by Plaintiff's
exhibit numbers ("Plf. Ex._____).

research on global climate change.  Plf. Ex. B-1 at 1-2.

**RESPONSE:**     SLF does not dispute the material facts of Paragraph 2 of the Agency's Statement, but disputes that Paragraph 2 of the Agency's Statement reflects the full extent of the records SLF requested from the Agency.

3.     For the April 2010 request, Plaintiff requested that EPA waive all search, review, and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 40 C.F.R. § 2.107.  Plf. Ex. B-1 at 2.

**RESPONSE:**     SLF does not dispute the material facts of Paragraph 3 of the Agency's Statement.

4.     EPA originally denied Plaintiff's request for a fee waiver in its entirety. Plf. Ex. B-5 at 1.

**RESPONSE:**     SLF does not dispute the material facts of Paragraph 4 of the Agency's Statement.

5.     Plaintiff administratively appealed EPA's decision denying its request for a fee waiver in its entirety.  Plf. Ex. B-6 at 1-7.

**RESPONSE:**     SLF does not dispute the material facts of Paragraph 5 of the Agency's Statement.

6.     In Plaintiff's administrative appeal of EPA's decision denying Plaintiff's request for a fee waiver, Plaintiff justified its fee waiver request by stating

3

that the information requested was related to EPA's Endangerment and Cause or Contribute Findings, and to EPA's involvement in "funding research into anthropogenic global warming and climate change."  Plf. Ex. B-6 at 4.

**RESPONSE:**    SLF disputes Paragraph 6 of the Agency's Statement. Although SLF does not dispute the Agency accurately quoted from page 4 of SLF's June 3, 2010 administrative appeal of the Agency's denial to its request for expedited processing and fee waiver, the Agency mischaracterized SLF's administrative appeal.  The quoted language is materially incomplete and fails to provide SLF's full justification for its fee waiver request.

**7.**    Plaintiff also justified its fee waiver decision by stating: "The Request detailed SLF's concerns about the policy and scientific bases for the [Endangerment and Cause or Contribute] Findings.  SLF also expressed concern regarding the constitutionality and costs of any regulatory schedule resulting from the Findings. EPA decisions based on the Findings will affect all U.S. citizens directly or indirectly, and thus the reasoning and bases the EPA employed will 'significantly' enhance the public's understanding of the Finding's implications."  Ex. B-6 at 5.

**RESPONSE:**    SLF disputes Paragraph 7 of the Agency's Statement. Although SLF does not dispute the Agency accurately quoted from page 5 of SLF's June 3, 2010 administrative appeal of the Agency's denial to its request for expedited

4

processing and fee waiver, the Agency mischaracterized the quoted language is materially incomplete and fails to provide SLF's full justification for its fee waiver request.

8.    EPA denied Plaintiff's appeal of EPA's decision denying its request for a fee waiver.  Plf. Ex. B-15 at 1-4.

**RESPONSE:**    SLF does not dispute the material facts of Paragraph 8 of the Agency's Statement.

9.    EPA explained in its denial letter that Plaintiff's request for a fee waiver was denied because Plaintiff did not explain how the disclosure of the particular records requested would contribute significantly to the public's understanding of the Endangerment and Cause or Contribute Findings.  Pl. Ex. B- 15 at 3-4.

**RESPONSE:**    SLF does not dispute the material facts of Paragraph 9 of the Agency's Statement.

10.    The EPA's Endangerment and Cause or Contribute Findings are publicly available and published in the Federal Register. 74 Fed. Reg. 66,496 (December 9, 2009). EPA has also provided on its website hundreds of pages of documents supporting the Endangerment and Cause or Contribute Findings.  These documents        are        publically        available        at

5

http://www.epa.gov/climatechange/endangerment.

**RESPONSE:**    SLF does not dispute that EPA's Endangerment and Cause

or Contribute Findings are publicly available and published in the Federal Register

or that EPA has made available documents that it contends support the

Endangerment and Cause or Contribute Findings.  SLF does dispute that these facts

are material in that neither the Endangerment and Cause or Contribute Findings nor

the documents provided at http://www.epa.gov/climatechange/endangerment are

responsive to FOIA Request HQ-FOI-01115-10.

**11.**    Plaintiff thereafter filed another administrative appeal contending that

EPA could not statutorily impose search fees under 5 U.S.C. § 552(a)(4)(viii)

because the Agency did not comply with FOIA's statutory time limits in processing

Plaintiff's appeal with respect to search fees. Plf. Ex. B-27 at 1-2.

**RESPONSE:**    SLF disputes the Agency's characterization of SLF's

administrative appeal.  SLF does not dispute that in an email dated December 8,

2011, SLF explained that because EPA failed to provide SLF with an initial

determination within 20 days as required by FOIA (even applying the most liberal

dates in the Agency's favor), the Agency may not assess search fees.  *See* Compl.

Ex. B-19.  Nor does SLF dispute that on May 16, 2012, SLF submitted an

administrative appeal for delay in processing Request No. HQ-FOI-01115-10.  *See*

6

Compl. Ex. B-25.

**12.** EPA granted the appeal with respect to search fees and waived all search fees for Plaintiff's April 2010 request. *Id.*

**RESPONSE:** SLF disputes the Agency's characterization of SLF's administrative appeal. SLF does not dispute that through a letter dated June 21, 2012, the Agency responded to SLF's administrative appeal for delay in processing and stated that SLF was entitled to a fee waiver with respect to search costs. Compl. Ex. B-27.

**13.** EPA informed Plaintiff, however, that it would still be responsible for paying duplication fees, and that EPA would provide later an estimate for such duplication costs. *Id.*

**RESPONSE:** SLF does not dispute the material facts of Paragraph 13 of the Agency's Statement.

**14.** EPA thereafter estimated that duplication costs would be $1,125. Declaration of Lisa Doucet ("Doucet Decl.") ¶ 18.

**RESPONSE:** SLF does not dispute the material facts of paragraph 14 of the Agency's Statement.

**15.** Plaintiff informed EPA that it did not approve the cost estimate of $1,125 in duplication fees, and requested that all fees should be avoided by

7

transmitting the responsive information in electronic format. *Id.* ¶ 26.

**RESPONSE:**      SLF does not dispute the material facts of Paragraph 15 of the Agency's Statement.

16.      The requested documents, however, were available only in paper format and were not maintained or readily available electronically, and thus EPA determined that scanning and digitizing all of the responsive documents, which totaled over 11,000 pages, would be more expensive and take additional time as compared to providing paper copies. *Id.* ¶ 27.

**RESPONSE:**      SLF lacks knowledge to confirm or deny Paragraph 16 of the Agency's Statement. *See Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 145 (D.C. Cir. 2006) (noting the "asymmetrical distribution of knowledge" as between a FOIA requestor and an agency in FOIA cases).

17.      Because SLF was unwilling to provide an assurance of payment of duplication fees, EPA determined that the request should be administratively closed. *Id.* ¶ 28.

**RESPONSE:**      SLF lacks knowledge to confirm or deny why the Agency administratively closed SLF's request. *See Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 145 (D.C. Cir. 2006) (noting the "asymmetrical distribution of knowledge" as between a FOIA requestor and an agency in FOIA cases).

However, SLF does not dispute that in an email dated September 18, 2012, the Agency notified SLF that it would be administratively closing Request No. HQ-FOI-01115-10 because SLF would not assure payment for duplication costs.  Compl. Ex. B-28.

**B. Plaintiff's November 2013 Request Seeking Records Pertaining To EPA's Annual FOIA Reports.**

18.    In November 2013, Plaintiff requested records pertaining to the statistical data that EPA used to create its Annual FOIA Reports from October 2008 to September 2012.  Plf. Ex. C-1 at 1-6.

**RESPONSE:**    SLF does not dispute the material facts of Paragraph 18 of the Agency's Statement, but disputes that Paragraph 18 of the Agency's Statement reflects the full extent of the records SLF requested from the Agency.

19.    In response to the November 2013 request, EPA explained that all FOIA Annual Reports are available online.  Plf. Ex. C-9 at 1; Declaration of Larry Gottesman ("Gottesman Decl.") ¶ 8.

**RESPONSE:**    SLF disputes that the Agency "explained that *all* FOIA Annual Reports are available online." (emphasis added).  However, SLF does not dispute that in a letter dated March 6, 2014, the Agency stated, "EPA Annual Reports are available on line . . .."  Compl. Ex. C-9.

20.    In its response letter, EPA provided the link to its FOIA Annual Report

website at http://www.epa.gov/foia/annual.html.  This website contained  both the
.PDF and .XML data versions of the FOIA Annual Report for fiscal years 2009-2012.
Gottesman Decl. ¶ 8.  The current link for the EPA's FOIA annual report site is:
http://www/epa.gov/epafoia1/annual.html.

> **RESPONSE:**      SLF does not dispute the material facts of Paragraph 20 of
the Agency's Statement.

21.     Both the NIEM-XML and human-readable versions contain eight
identical sections of data, but the human-readable version also contains additional
textual sections.  *Id.*  All requests (perfected and non-perfected), appeals, and
consultations that were pending at any time during the relevant fiscal year (October
1st through September 30th) will be captured in at least one of the eight data sections
covered in both versions of the Report.  *Id.*

> **RESPONSE:**      SLF lacks knowledge to confirm or deny Paragraph 21 of
the Agency's Statement.  *See Judicial Watch, Inc. v. Food and Drug Admin.*, 449
F.3d 141, 145 (D.C. Cir. 2006) (noting the "asymmetrical distribution of knowledge"
as between a FOIA requestor and an agency in FOIA cases).

22.     In addition, EPA explained that prior to the October 2012 expiration of
the EPA's contract with FOIAxpress, the EPA had the ability, through its
FOIAxpress contractor, to produce custom  reports and data using the so-called

"back-end" capability of FOIAxpress. However, at the end of fiscal year 2012, when the contract ended, EPA no longer had that capability.  Gottesman Decl.  Plf. Ex. C-9 at 1; Gottesman Decl. ¶ 10.

     **RESPONSE:**     SLF does not dispute that the Agency submitted the Declaration of Larry Gottesman.  The declaration speaks for itself.  SLF does not dispute the fact that in its March 6, 2014 letter to SLF, the Agency explained that it no longer uses FOIAXpress and that in the past, when the Agency received a similar request, the vendor had to run a special report, through the "back-end" and that the Agency does not have access to the "back-end."  (Compl. Ex. C-9.)   SLF does not dispute the fact that during a telephone conversation on January 16, 2013, Mr. Gottesman explained that it used FOIAXpress to track its FOIA requests for the years 2009 through 2012.  SLF lacks knowledge to confirm or deny when the Agency's contract with FOIAXpress expired.  *See Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 145 (D.C. Cir. 2006) (noting the "asymmetrical distribution of knowledge" as between a FOIA requestor and an agency in FOIA cases).

     23.     Plaintiff requested that EPA waive all search, review, and duplication fees for its November 2013 request  pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 40 C.F.R. § 2.107.  Plf. Ex. C-4 at 1-3.

**RESPONSE:**      SLF does not dispute the material facts of paragraph 23 of the Agency's Statement.

24.      EPA denied the request, Plf. Ex. C-5, and Plaintiff administratively appealed this decision, Plf. Ex. C-10 at 1-5.

**RESPONSE:**      SLF does not dispute the material facts of paragraph 24 of the Agency's Statement.

25.      On appeal, EPA denied Plaintiff's fee waiver request as moot because no additional, non-public responsive documents were found, and thus there were no chargeable fees.  Plf. Ex. C-11 at 1-2.

**RESPONSE:**      SLF does not dispute that in a letter dated June 30, 2014, the Agency denied SLF's administrative appeal of the denial of its fee waiver request as moot because "no responsive records were located" and "[t]here were no billable fees associated with [SLF's] request."  Compl. Ex. C-11.   SLF lacks knowledge to confirm or deny whether EPA found any "additional, non-public responsive documents."  *See Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 145 (D.C. Cir. 2006) (noting the "asymmetrical distribution of knowledge" as between a FOIA requestor and an agency in FOIA cases).

26.      In the course of preparing EPA's summary judgment motion, EPA located documents responsive to parts of Plaintiff's November 2013 request,

specifically Items 2, 4, 6, and 8.  Gottesman Decl. ¶ 14.

**RESPONSE:**    SLF lacks knowledge to confirm or deny this paragraph. *See Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 145 (D.C. Cir. 2006) (noting the "asymmetrical distribution of knowledge" as between a FOIA requestor and an agency in FOIA cases).

27.    Mr. Gottesman searched his files, and has instructed EPA staff in the Office of General Counsel to search their files and the files of a former EPA contractor for any documents responsive to items 2, 4, 6, and 8 of Plaintiff's request, which asked for any "[w]ritten or electronic correspondence, data,  memoranda, or reports . . ." discussing the identified sections of the EPA Annual  FOIA Reports for fiscal years 2009 – 2012. Gottesman Decl. ¶ 14.

**RESPONSE:**    SLF lacks knowledge to confirm or deny this paragraph. *See Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 145 (D.C. Cir. 2006) (noting the "asymmetrical distribution of knowledge" as between a FOIA requestor and an agency in FOIA cases).

28.    The search of Mr. Gottesman's files, the files of the Office of General Counsel, and the files from the former EPA contractor resulted in approximately 48 responsive documents, totaling approximately 700 pages of responsive material.  *Id*.

**RESPONSE:**    SLF lacks knowledge to confirm or deny this paragraph.

*See Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 145 (D.C. Cir. 2006) (noting the "asymmetrical distribution of knowledge" as between a FOIA requestor and an agency in FOIA cases).

29.     Mr. Gottesman also searched the EPA's official records-keeping system, the Electronic Content Management System ("ECMS") for any records responsive to items 2, 4, 6, and 8 of Plaintiff's request, which asked for any "[w]ritten or electronic correspondence, data, memoranda, or reports . . ." discussing the identified sections of the EPA Annual FOIA Reports for fiscal years 2009 – 2012. The search of the ECMS system resulted in approximately 60 responsive documents, totaling approximately 800 pages of responsive material. *Id.* ¶ 15.

**RESPONSE:**     SLF lacks knowledge to confirm or deny this paragraph. *See Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 145 (D.C. Cir. 2006) (noting the "asymmetrical distribution of knowledge" as between a FOIA requestor and an agency in FOIA cases).

30.     Mr. Gottesman's files, the files of the Office of General Counsel, the files of the former EPA contractor, and the ECMS records-keeping system are the locations that are likely to have responsive records to items 2, 4, 6, and 8 of Plaintiff's request. These searches, described above, resulted in a total of approximately 107 documents, totaling approximately 1500 pages of responsive material, which was

14

provided to Plaintiff on June 19, 2015.  *Id.* ¶ 16.

**RESPONSE:**      SLF does not dispute that on June 19, 2015, the Agency released 1,490 pages of records to SLF.  However, SLF lacks knowledge to confirm or deny the remainder of material facts of paragraph 30 of the Agency's Statement. *See Judicial Watch, Inc. v. Food and Drug Admin.*, 449 F.3d 141, 145 (D.C. Cir. 2006) (noting the "asymmetrical distribution of knowledge" as between a FOIA requestor and an agency in FOIA cases).

**31.**      As described in the attached Vaughn index, the EPA has redacted and withheld portions of 6 documents, consisting of 17 partially redacted pages, under FOIA exemption 5 and the deliberative process and attorney-client privileges.  The EPA has released all other responsive information in full to Plaintiff, including multiple drafts of the FOIA Annual Reports for FY 2009 through 2012 which were transmitted between EPA staff, EPA contractors, and the Department of Justice.  *Id.* at 17.

**RESPONSE:**      The facts asserted in Paragraph 31 are not material as SLF has not challenged EPA's redactions and withholding of portions of the 6 documents logged on the Vaughn Index.

**32.**      The EPA has withheld no documents in full.  *Id.* ¶ 17.

**RESPONSE:**      The facts asserted in Paragraph 32 are not material as SLF

has not challenged EPA's redactions and withholding of portions of the 6 documents logged on the Vaughn Index.

33. The portions of records withheld under Exemption 5 and the deliberative process and attorney-client privileges comprise portions of a single email chain discussion between EPA's Agency FOIA Officer, attorneys in the Department of Justice, and attorneys in the EPA's Office of General Counsel related to the applicability of Exemption 3 of the FOIA. *Id.* ¶ 18.

**RESPONSE:** The facts asserted in Paragraph 33 are not material as SLF has not challenged EPA's redactions and withholding of portions of the 6 documents logged on the Vaughn Index.

34. In addition, release of this information would have a chilling effect on Mr. Gottesman and his staff's ability to receive candid advice from Agency attorneys. *Id.* EPA attorneys advise Mr. Gottesman and his staff on EPA's legal obligations under the FOIA, and ensure that EPA's work products and exemption decisions are consistent with federal law and regulation. *Id.*

**RESPONSE:** The facts asserted in Paragraph 34 are not material as SLF has not challenged EPA's redactions and withholding of portions of the 6 documents logged on the Vaughn Index.

35. The disclosure of such communications to Plaintiff would deprive Mr.

Gottesman, his staff, and the agency in general, of the benefit of confidential advice from EPA and/or DOJ attorneys in legal matters related to the application of FOIA exemptions. *Id.*

**RESPONSE:**    The facts asserted in Paragraph 35 are not material as SLF has not challenged EPA's redactions and withholding of portions of the 6 documents logged on the Vaughn Index.

**36.**    The portions of records that EPA is redacting and withholding pursuant to Exemption 5 under the deliberative process and attorney client  privileges have been reviewed to ensure that all REASONABLY segregable factual information has been released to Plaintiff. *Id.* ¶ 19. Factual information contained within the withheld portions of the documents was determined to be inextricably  intertwined with the privileged information, and could not be reasonably  segregated. *Id.*  The withheld information has not been shared outside those with a  need to know within EPA and the Department of Justice.  *Id.*

**RESPONSE:**    The facts asserted in Paragraph 36 are not material as SLF has not challenged EPA's redactions and withholding of portions of the 6 documents logged on the Vaughn Index.

**Plaintiff's Statement of Undisputed Material Facts in Support of Its Cross-Motion for Partial Summary Judgment**

**1.**    On April 12, 2010, SLF submitted a FOIA request to EPA seeking

records regarding awards or grants of federal funds for research on global climate change (Request No. HQ-FOI-01115-10).  (Compl. Ex. B-1.)

    **2.**        Specifically, SLF sought the following records:

a.      Grant applications seeking federal funds for any and all research on global climate change, its causes and effects, methods of measuring changes in climate, and responses to climate change, in any scientific discipline and for any purpose;

b.      Awards, grants, or funding notifications made pursuant to applications seeking federal funds for research on global climate change, its causes and effects, methods of measuring changes in climate, and responses to climate change, in any scientific discipline and for any purpose;

c.      Accompanying and subsequent correspondence between your agency and grant applicants or recipients, including but not limited to supplemental, tailoring agreements, revisions or amendments, compliance instructions, and completeness, eligibility, or substantive review documents;

d.      Denial or deferral of awards, grants, or funding made in response to applications seeking federal funds for research on global climate change, its causes and effects, methods of measuring changes in climate, and responses to climate change, in any scientific discipline and for any purpose;

e.      Any and all documents referencing, describing, or creating: contracts for labor, consulting, or employment; purchases of capital or material; transfers or purchases or real property; and any other agreements entered by the funding grantee or its principal investigator in furtherance of or in conjunction with federally funded research on global climate change, its causes and effects, methods of measuring changes in climate, and responses to climate change, in any scientific discipline and for any purpose.

(Compl. Ex. B-1.)

**3.** SLF sought a waiver of search, review and reproduction fees pursuant to the FOIA (5 U.S.C. § 552(a)(4)(A)(iii)) and EPA regulations (40 CFR 2.107) because the information sought "is in the public interest, is likely to contribute to public understanding of the operations and activities of government, and because SLF has no commercial interest in the information." (Compl. Ex. B-1.)

**4.** By letter dated April 20, 2010, EPA set forth the following six factors it considers when reviewing a fee waiver request:

1. The subject matter of the requested records must specifically concern identifiable operations or activities of the government. A request for access to records for their informational content alone does not satisfy this factor.

2. For the disclosure to be "likely to contribute" to an understanding of specific government operations or activities, the releasable material must be meaningfully informative in relation to the subject matter of the request.

3. The disclosure must contribute to the understanding of the public at large, as opposed to the understanding of the requester or a narrow segment of interested persons. One's status as a representative of the news media alone is not enough.

4. The disclosure must contribute "significantly" to public understanding of government operations or activities.

5. The extent to which disclosure will serve the requester's commercial interest, if any.

6. The extent to which the identified public interest in the disclosure outweighs the requester's commercial interest.

(Compl. Ex. B-3.)

**5.**    EPA's April 20 letter also stated that if SLF wished to receive a fee waiver it "must address, in sufficient detail, these six factors, and that if SLF did not respond within seven days from the date of the letter, EPA would automatically deny SLF's request[]."  (Compl. Ex. B-3.)

**6.**    In a letter dated April 27, 2010, SLF responded to EPA's April 20, 2010 letter, and as requested, SLF provided detailed justification for its request for a fee waiver.  (Compl. Ex. B-4.)

**7.**    In the April 27, 2010 letter, SLF responded to the first factor and explained that the request seeks information regarding "EPA determinations and decision-making processes involving anthropogenic global warming or climate change" and "centers on EPA decision-making processes involving the awarding of scientific grants to various persons and institutions . . . these grants and denials of grants involve U.S. taxpayer dollars and how the EPA chooses to disperse those dollars for research involves a specific activity of the government."  (Compl. Ex. B-4 at 2-3.)

**8.**    In the April 27, 2010 letter, SLF responded to the second factor and explained that disclosure of the requested information "would elaborate on a perhaps esoteric function of the government: how and under what criteria does the EPA award or deny scientific grants to persons and institutions . . . any insight into this process would be meaningfully informative to the general public."  (Compl. Ex. B-4 at 3.)

**9.**     In the April 27, 2010 letter, SLF responded to the third and fourth factors and explained it would "disseminate the information gathered through the Request to the largest audience possible . . . through our publicly available website and ancillary websites created for specific litigation; mailers and publications we produce throughout each year; and any publically available court documents used as evidence in litigation."  SLF further explained that "the dissemination of [its] work to the general public is one of the most important components of [its chartered] directive."  (Compl Ex. B-4 at 3.)

**10.**     In its April 27, 2010 letter, SLF referred EPA to another FOIA Request submitted by SLF that EPA was currently processing for which EPA granted a fee waiver request.  SLF explained that "[b]oth requests seek information regarding different aspects of the same issue: EPA determinations and decision-making processes involving anthropogenic global warming or climate change."  (Compl. Ex. B-4 at 2.)

**11.**     In its April 27, 2010 letter, SLF responded to the fifth and sixth criteria and explained that "SLF is a nonprofit enterprise with absolutely no commercial interest in the information we would collect through the Request.  (Compl. Ex. B-4 at 3.)

**12.**    By letter dated May 4, 2010, EPA denied SLF's fee waiver request for the only following articulated reason: SLF allegedly did "not express a specific intent to publish or disseminate the information to the general public."  (Compl. Ex. B-5 at 1.)

**13.**    On June 3, 2010, SLF administratively appealed EPA's denial of SLF's fee waiver request.  (Compl. Ex. B-6.)

**14.**    In its June 3 letter, SLF elaborated on its already expressed intention and ability to interpret, analyze, publish and disseminate the requested records. (Compl. Ex. B-6.)

**15.**    In its June 3 letter, SLF explained the requested records contain information related to how EPA funds research into anthropogenic global warming and climate change and to the Endangerment and Cause or Contribute Findings, the potential effects of which have vast and numerous implications for the United State economy and all of its citizens.  (Compl. Ex. B-6 at 4.)

**16.**    In its June 3 letter, SLF set forth a plan for disseminating the information and its analysis of the information which included its publicly available websites, its numerous publications and mailers, and as a by-product, any publicly available court documents arising out of potential litigation related to the Endangerment and Cause or Contribute Findings. (Compl. Ex. B-6 at 4.)

22

17.    In a letter dated August 16, 2011, EPA denied SLF's fee waiver request and claimed that SLF did not satisfy the first, second and fourth factors.  (Compl. Ex. B-15.)

18.    By way of an email dated December 7, 2011, EPA provided its initial response to Request No. HQ-FOI-01115-10.  The email stated in pertinent part: "We have identified 117 grants that may be applicable to your FOIA request.  We estimate that the total cost for search and duplication, as appropriate, is $2,000.00.  It will take approximately eight months to retrieve and review the documents for relevancy and make a determination of releasability or non-releasability.   Our estimated completion date is August 2012."  (Compl. Ex. B-18.)

19.    The following day, December 8, 2011, SLF responded explaining that because EPA failed to provide SLF with an initial determination within 20 days as required by the FOIA, the Agency may not assess search fees.  (Compl. Ex. B-19.)

20.    On May 16, 2012, SLF submitted an administrative appeal to EPA for delay in processing Request No. HQ-FOI-01115-10.  (Compl. Ex. B-25.)

21.    In a letter dated June 21, 2012, EPA responded to SLF's December 8, 2011 email and May 16, 2012 administrative appeal for delay in processing and notified SLF it was entitled to a fee waiver with respect to search costs and the

Agency would contact SLF by July 3, 2012 with an estimated processing date and duplication costs.  (Compl. Ex. B-27.)

**22.**    In an email dated July 5, 2012, EPA informed SLF duplication would cost approximately $1,125.00 and it would take EPA another five months to process the request.  (Compl. Ex. B-28.)

**23.**    In an email dated September 10, 2012, SLF responded to EPA and explained that it would not approve the duplication costs because all duplication costs could be avoided by producing the documents electronically.  (Compl. Ex. B-28.)

**24.**    In September 2012, EPA administratively closed Request No. HQ-FOI-01115-10.  (Compl. Ex. B-28.)

 FOIA Request No. EPA-HQ-2014-001489

**25.**    On November 22, 2013, SLF submitted a FOIA request to EPA seeking the raw statistical data referred to in 5 U.S.C. § 552(e)(3) that EPA used to create its annual FOIA reports for the years 2009 through 2012, and any records relating to those reports (FOIA Request No. EPA-HQ-2014-001489).  (Compl. Ex. C-1.)

**26.**    SLF sought a waiver of search, review and reproduction fees pursuant to the FOIA (5 U.S.C. § 552(a)(4)(A)(iii)) and EPA regulations (40 CFR 2.107) because the information sought "is in the public interest, is likely to contribute to

public understanding of the operations and activities of government, and because SLF has no commercial interest in the information."  (Compl. Ex. C-1.)

27.    By letter dated November 27, 2013, EPA set forth the following six factors it considers when reviewing a fee waiver request:

1. The subject matter of the requested records must specifically concern identifiable operations or activities of the government.  A request for access to records for their informational content alone does not satisfy this factor.

2. For the disclosure to be "likely to contribute" to an understanding of specific government operations or activities, the releasable material must be meaningfully informative in relation to the subject matter of the request.

3. The disclosure must contribute to the understanding of the public at large, as opposed to the understanding of the requester or a narrow segment of interested persons.  One's status as a representative of the news media alone is not enough.

4. The disclosure must contribute "significantly" to public understanding of government operations or activities.

5. The extent to which disclosure will serve the requester's commercial interest, if any.

6. The extent to which the identified public interest in the disclosure outweighs the requester's commercial interest.

(Compl. Ex. C-3.)

28.    EPA's November 27, 2013 letter also stated that if SLF wished to receive a fee waiver it "must address, in sufficient detail, these six factors, and that if SLF did not respond within seven days from the date of the letter, EPA would

automatically deny SLF's request[]."  (Compl. Ex. C-3.)

29.    In a letter dated December 9, 2013, SLF responded to EPA's November 27, 2013 letter, and as requested, provided detailed justification for its fee waiver request.  (Compl. Ex. C-4.)

30.    In its December 9 letter, SLF responded to the first factor and explained that because "responding to FOIA requests is an identifiable operation or activity of federal agencies, any request for information regarding how the EPA responded to FOIA requests is a request for information regarding an identifiable operation or activity of the EPA."  (Compl. Ex. C-4 at 1-2.)

31.    In its December 9 letter, SLF responded to the second factor and explained that the underlying raw statistical data and related communications provide meaningful insight into how EPA processes FOIA requests and into governmental transparency generally.  (Compl. Ex. C-4 at 2.)

32.    In its December 9 letter, SLF responded to the third and fourth factors and explained that the EPA's processing of FOIA requests including delays in response time, denials of requests and exemption claims, have far-reaching consequences that, as President Obama himself has pointed out, affect every single American and will contribute significantly to the public's understanding of how EPA processes FOIA requests.  (Compl. Ex. C-4 at 2.)

33.    In its December 9 letter, SLF responded to the fifth and sixth factors and explained "SLF has absolutely no commercial or financial interest in the requested information, and would receive no pecuniary benefit from the information

26

sought." (Compl. Ex. C-4 a 2-3.) SLF also explained that it "is a non-profit public interest law firm." (Id. at 1.)

**34.** By letter dated December 12, 2013, EPA denied SLF's fee waiver request for the only following articulated reason: SLF allegedly did "not express a specific intent to publish or disseminate the information to the general public." (Compl. Ex. C-5.)

**35.** On January 10, 2014, SLF administratively appealed EPA's denial of its fee waiver request and explained that SLF will analyze and disseminate the information through its websites and publications to ensure it is accessible to the tens of thousands of FOIA requesters and public at large.. (Compl. Ex. C-6.)

**36.** By letter dated January 13, 2014, SLF administratively appealed EPA's delay in processing its request. (Compl. Ex. C-7.) Despite Mr. Gottesman informing SLF it would receive a letter stating EPA does not have responsive records, EPA never provided such notification. In its letter, SLF explained that "EPA's inexplicable delay in providing SLF with the requisite written notification has caused SLF irreparable harm and undue delay because SLF cannot appeal the adverse determination until it has received EPA's written determination." (Id. at 3.)

**37.** In a letter dated March 6, 2014, EPA provided its final determination and stated it was unable to produce the requested records for the following reasons: "EPA used FOIAXpress, as the tracking tool and to create EPA's FOIA Annual Reports which are the subject of your request. FOIAXpress is a proprietary software tool that is no longer being used by EPA or being supported by the vendor. In the

past when we received a similar request, that vendor had to run a special report, through the 'back-end', which we do not have access to."  (Compl. Ex. C-9.)

**38.**    By letter dated April 4, 2014, SLF administratively appealed EPA's final determination.  (Compl. Ex. C-10.)  SLF explained EPA failed to even respond to Items 2, 4, 6, and 8 of the request and that EPA has a statutory obligation to produce records responsive to Items 1, 3, 5, and 7 because they did not lose their "agency record" status just because they were maintained by a government contractor.  (Id. at 2.)  SLF further explained that pursuant to 5. U.S.C. § 552(e)(3), all agencies are required to make the records sought in Items 1, 3, 5, and 7 available to the public upon request, regardless of who maintains them.  (Id.)

**39.**    In a letter dated June 30, 2014, EPA responded to SLF's January 10, 2014 administrative appeal of the Agency's fee waiver request denial and stated that because "no responsive records were located],]" its denial of SLF's fee waiver request was moot.  (Compl. Ex. C-11.)

**40.**    EPA never responded to SLF's April 4, 2014 administrative appeal. (Gottesman Decl. ¶ 13.)

**41.**    According to Mr. Gottesman's declaration, the requested information is on an external hard drive which is currently retained in accordance with EPA policies and records schedules.  (Gottesman Decl. ¶ 11.)

**42.**    On July 20, 2015, Kimberly S. Hermann spoke with Yerusha Beaver, Assistant Regional Counsel for EPA Region 6, regarding a FOIA request SLF submitted to the Agency on February 9, 2015.  (Declaration of Kimberly Hermann

"Hermann Decl." Decl. ¶ 5.)

43.      During the telephone call, Ms. Beaver directed Ms. Hermann to FOIA Online at https://foiaonline.regulations.gov/foia/action/public/homeand walked her through searches.  One of the searches revealed a request made on August 14, 2013 by the American Farm Bureau Federation for "copies spreadsheet of all FOAI fee waiver requests and determinations."  (Hermann Decl. ¶¶ 6-7, Ex. A.)

44.      According to FOIA Online, on December 13, 2013, EPA responded and provided American Farm Bureau Federation with a spreadsheet detailing all of the raw statistical data regarding fee waiver requests for January 21, 2009 through May 17, 2013.  (Hermann Decl. ¶ 8, Ex. B.)

45.      The information EPA produced to American Farm Bureau Federation in response to its FOIA request is also responsive to SLF's FOIA Request No. EPA-HQ-2014-001489.  (Hermann Decl. ¶ 9, Ex. B.)

46.      EPA did not produce the information to SLF in response to FOIA Request No. EPA-HQ-2014-001489 that it produced to American Farm Bureau Federation in response to its FOIA.  (Hermann Decl. ¶ 10.)

This 20th day of July, 2015.

Southeastern Legal Foundation, Inc.

By:    /s/ Shannon L. Goessling
        Shannon L. Goessling
        Georgia Bar No. 298951
        Kimberly S. Hermann
        Georgia Bar No. 646473

29

2255 Sewell Mill Road
Suite 320
Marietta, Georgia 30062
(770) 977-2131
(770) 977-2134 (Fax)

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2015, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail and/or facsimile. Parties may access the filing through the Court's electronic filing system.

/s/ Shannon L. Goessling